Day, J.
The plaintiffs bring their action to procure an order of the court cancelling a mortgage on real property of plaintiff, Sarah E. Boyer, situated in the city of Tiffin, Ohio, and as a basis for such action on the part of the court it is alleged that the conditions of the mortgage have been fully complied with and the money secured by it paid or tendered, and a refusal on the part of the holder of the note to enter satisfaction on the record.
The defendants answer jointly, denying that plaintiffs have paid the money secured by the mortgage in full, admit partial payment, but assert there is due and unpaid the sum of $2,603.-98, with eight per cent, interest .from January 7, 1892, and ask judgment for the same and an order to sell the mortgaged premises to pay the judgment.
Other facts are stated, showing in substance, a transaction between Mr. Kintz and Boyers in the way of a speculation or deal by them in the purchase of a stock of merchandise and notes, given by Godman & Co., from Marshall Field & Co., of Chicago, Illinois, in which it is asserted by the defendants that Mr. Kintz and Boyers made a contract by which the Boyers, in consideration that Mr. Kintz would render the necessary service ,of devising ways and means to accomplish the deal, would pay him the sum of certain notes of Godman & Co. In the amount of $2,425; that Mr. Kintz rendered the service according to contract, and procured the necessary $12,000; indorsed for them for $3,680; also guaranteed the mortgage on Chicago real estate, and avers that in accordance with the ar *656 rangement thus made, payments made by the Boyers and now claimed as payment of mortgage, was applied in payment of hrs claim for services rendered in the deal for the merchandise.
By reply, the plaintiffs deny the statements as to a deal by Mr. Kintz and them. Deny that he rendered any service other than as an officer of the bank in the loan of $12,000. Aver that for this loan they were to pay eight per cent, interest and have paid it. Deny any contract to pay $2,425, and insist that if there was a contract to that effect, it was, in effect, a contract for usurious interest, and, therefore, illegal and void; so that payments made on account thereof must, under the statutes, be applied as payment on the principal debt. If this contention of plaintiffs is correct it is decisive of the case; for it is an undisputed fact, that, considering all the payments made and tendered as payments on account of principal debt, the principal debt is fully extinguished and the plaintiffs are entitled to the relief they ask.
On the other hand, i'f Mr. Kintz’s claim of an agreement to render .service to Mr. Boyer in the matter of the purchase of this stock of merchandise, for an agreement and consideration of $2,425 to be paid him by the Boyers out of the proceeds realized from the sale of the stock, and payment as per contract is made out by the evidence, then, so far as the claim of the bank is concerned, it is not tainted with unconscionable usury, whatever may be said by ill-natured persons as to the transaction between Kintz and his relatives, the Boyers. So the right of the parties to the relief prayed for in this action, the plaintiff to have the mortgage cancelled and the bank to have it enforced by a sale, depends upon the character of the transaction between Mr. Kintz and the Boyers in the matter of accomplishing the purchase of the stock of .goods, etc., from Marshall, Field & Co.
What was that transaction? Was it a separate and independent agreement between Kintz and the Boyers whereby Kintz was to render them a service as stipulated between them for a consideration of $2,425; to be paid, and paid; or was it an agreement between the Boyers and the bank made through Kintz, an officer of the bank, for a loan of money from the bank to Boyers for eight per cent, interest and $2,425 as a bonus, and usurious?
*657 ■.There is a sharp conflict in the testimony of Kintz and the Boyers as to the main question. In many respects, however, the testimony of the Boyers corroborates that of Kintz; other-facts and circumstances in evidence also corroborate Kintz, as we think, and make it quite apparent that Kintz’s version of the matter is the correct one. His statements as to the matter are entirely reasonable and probable, and naturally what we would expect Boyer and Kintz to do in the matter, possessing the characteristics and peculiarities they each disclosed in the short time they appeared before the court.
Here was the situation. Godman & Co. had been unfortunate, had failed, and assigned for the benefit of creditors. Two mammoth stocks of goods valued at $30,000 or so were thrown upon the market, and were to be sacrificed and sold for whatever they would bring. Godman & Co. were indebted to Kintz and the Boyers; to the former $2,425; to the latter, something like $2,000. Here was a chance to save themselves from loss and make a profit by availing themselves of the opportunity offered in the sale of the stock. In the language of Col. Mulberry Sellers, “There was millions in it.” Great possibilities there certainly were. Boyer himself was an old merchant with great experience in merchandizing. He had failed in business and was impervious. Mrs. Boyer had property and could pledge it as security for money with which to purchase the stock. Kintz had no experience in that particular line, but he had the cash (or could get it) and a disposition to avail himself -of this rare chance to save himself and his relatives from loss as creditors of Godman & Co. if he was well secured against loss.
To bring about a result so much to be desired, Kintz had money, Boyer had experience in the business; and Mrs. Boyer’s -ability to secure things was needed. What is more probable than that a gr?¿nd combination was formed, an alliance offensive and defensive negotiated for the “commonwealth,” in which Kintz put his money, Boyer his experience, and Mrs. Boyer her real estate, in Tiffin and Chicago, to secure the whole matter ?
The evidence is that the scheme was carried into effect; that it worked well; that it was entirely successful; the purchase of the stock was reduced to money and traded for a section of *658 Michigan land; the borrowed money, except the sum claimed as still due by the bank, was. repaid with interest; indorserswere protected and saved from loss; the consideration for Kintz’s service has been paid. It would seem that nothing remains to be done to close the transaction honorably, except a decree of this court to reimburse and make whole this much enduring and long suffering Tiffin Savings Bank.
Lutesi & Lutes, and John K. Rohn, for Plaintiffs.-
Seney & Sayler, for Defendants.
But, seriously, we are all of the opinion that the evidence in this case clearly shows an independent and separate contract between Kintz in his individual capacity and the Boyers, arranging for the purchase of the Godman & Co.’s stock of goods- and stipulating the portion of the proceeds realized therefrom each party was to receive, and the bank was in no sense a party to or connected with the arrangement. The bank,- on the procurement of Kintz and the Boyers, loaned its money at a legal' rate of interest, and is entitled to have it repaid with the legal interest; and in default, may have a decree ordering the sale-of the real estate pledged to secure its payment.
There will be a decree for the defendant on its cross-petition as prayed for, with costs. Decree and costs to be paid in thirty days from date, or in default, the premises ordered sold and the-proceeds applied, I. To the payment of taxes, if any are due. 2. To the payment of this decree and costs. 3. The residue-to Mrs. Boyer. Petition of the plaintiff dismissed at plaintiff’s costs.